## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **PLEXTRONICS, INC.,** | ) | **Case No. 14-10080 (KJC)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| | ) | **Related Docket Nos. 8 and 26 , 6 4** |

## ORDER (A) APPROVING BIDDING AND AUCTION PROCEDURES, (B) APPROVING BUYER EXPENSE REIMBURSEMENT FOR THE STALKING HORSE BIDDER, (C) SCHEDULING AN AUCTION AND SALE HEARING, (D) ESTABLISHING CERTAIN NOTICE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSIGNED, AND (E) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[1] of the Debtor for entry of this order (the "Bidding Procedures Order") (A) establishing bidding and auction procedures (the "Bidding Procedures") to be employed with respect to the sale (the "Sale") of the assets (the "Assets") of Plextronics, Inc. ("Plextronics" or the "Debtor") in its above-captioned chapter 11 case (the "Case") pending in this Court; (B) approving the Buyer Expense Reimbursement (the "Buyer Expense Reimbursement") for Solvay America, Inc. as the stalking horse bidder (the "Stalking Horse Bidder") in accordance with that certain Asset Purchase Agreement, dated as of January 16, 2014, as amended by the Asset Purchase Agreement Amendment No. 1 dated January 24, 2014 (the "Stalking Horse APA" and the bid of the Stalking Horse Bidder, the "Stalking Horse Bid") for the purchase of the Assets; (C) scheduling an auction (the "Auction") and a sale hearing (the "Sale Hearing") for the Sale of the Assets free and clear of all Interests (as defined in the Bidding Procedures); and (D) granting certain related relief; and it appearing that the relief requested is in the best interest of the Debtor's estate, its creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28

---

[1]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Motion.

U.S.C. §§ 157 and 1334; and it appearing that the Motion is a core proceeding pursuant to 28 U.S.C. § 157; and adequate notice of the Motion and opportunity for objection having been given, with no objections or requests for hearing having been filed, or all objections to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived, or settled as announced at the Bidding Procedures Hearing (as defined below) or resolved by stipulation signed by the Debtor and filed with this Court, having been overruled, as the case may be; and it appearing that no other notice need be given; and after due deliberation and sufficient cause therefore, it is hereby:

**BASED ON THE RECORD, THE COURT HEREBY FINDS:**

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 363, and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Venue for the Case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The Debtor has (i) articulated good and sufficient reasons to this Court to grant the relief requested in the Motion, including as to the Stalking Horse APA and the Bidding Procedures, and (ii) demonstrated sound business justifications to support such relief.

C. The Motion proposes the Sale of substantially all of the Debtor's Assets.  Given the Debtor's financial condition, a prompt sale of the Assets is critical in order to maintain the going concern value of the Debtor's operations for the benefit of the Debtor's estate and its creditors.

D. The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are fair, reasonable, and appropriate, and are designed to maximize the value of the Debtor's estate.

E. The Debtor and the Stalking Horse Bidder entered into the Stalking Horse APA, which was filed with the Court as an exhibit to the proposed Sale Order which was attached to the Motion as Exhibit B (with the Amendment No. 1 attached to the Notice filed with the Court on February 4, 2014 [D.I. 48]). The provisions of the Stalking Horse APA and the Bidding Procedures are reasonable, contain material inducements to the Stalking Horse Bidder, were reasonably relied upon by the Stalking Horse Bidder in deciding to enter into the Stalking Horse APA, and are designed to achieve the highest or otherwise best price for the Assets.

F. The Stalking Horse Bidder's right (under the conditions of and as set forth in the Stalking Horse APA and herein) to the Buyer Expense Reimbursement is: (i) except to the extent provided in the Stalking Horse APA, an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of section 503(b) of the Bankruptcy Code; (ii) of substantial benefit to the Debtor's estate; and (iii) reasonable and appropriate, in light of, among other things, (a) the size and nature of the proposed sale under the Stalking Horse APA, (b) the substantial efforts that have been expended by the Stalking Horse Bidder in performing the substantial due diligence and incurring the expenses necessary and entering into the Stalking Horse APA with the knowledge and risk that arises from participating in the sale and subsequent bidding process, and (c) the benefits that the Stalking Horse Bidder has provided to the Debtor's estate and creditors and all parties in interest herein (including by its willingness to provide financing to the Debtor), notwithstanding that the proposed sale is subject to higher or better offers; and (iv) necessary to ensure that the Stalking Horse Bidder will continue to pursue its proposed acquisition of the Assets. Accordingly, the Debtor has demonstrated a compelling and sound business justification for incurring its obligations with respect to the Buyer Expense Reimbursement.

G. The Bidding Procedures, including, but not limited to, the Buyer Expense Reimbursement, are fair and reasonable, provide a material benefit to the Debtor's estate and creditors, and were negotiated by the Debtor in good faith and at arm's length.

H. As set forth in the Motion, and in order to provide the Debtor with financing during the Sale process contemplated by the Stalking Horse APA, Solvay America, Inc., the Buyer, will also be the DIP Lender under the DIP Facility.

I. In addition to the DIP Facility, and per the Debtor's books and records, the other secured debt of the Debtor as of the Petition Date totaled approximately $30.2 million in the aggregate and was owing pursuant to the provisions of that certain Convertible Note Purchase Agreement, dated as of June 30, 2011 (as amended, restated or otherwise modified from time to time, the "2011 Note Agreement"), that certain Convertible Note Purchase Agreement, dated as of April 2, 2012 (the "April 2012 Note Agreement"), that certain Convertible Note and Warrant Purchase Agreement, dated as of July 13, 2012 (the "July 2012 Note Agreement"), that certain Convertible Note and Warrant Purchase Agreement, dated as of May 24, 2013 (the "May 2013 Note Agreement"), and that certain Convertible Note and Warrant Purchase Agreement, dated as of September 20, 2013 (the "September 2013 Note Agreement" and together with the 2011 Note Agreement, the April 2012 Note Agreement, the July 2012 Note Agreement and the May 2013 Note Agreement, the "Pre-Petition Note Agreements"), each by and among the Debtor and certain other investors named therein (the "Investors").

J. As set forth in the Motion, the relationships *inter se* among the creditors under the DIP Facility, the September 2013 Note Agreement, and the other Pre-Petition Note Agreements are governed pursuant to that certain Third Amended and Restated Credit Agreement, dated as of September 20, 2013 (the "Intercreditor Agreement"), by and among the Debtor, Solvay, and

certain other creditors, including SVIC No. 20 New Technology Business Investment L.L.P. and UDC, Inc., which effectively sets forth three priority levels of such secured debt: (1) the DIP Facility; (2) the September 2013 Note Agreement; and (3) the Pre-Petition Note Agreements (other than the September 2013 Note Agreement).

K. At the closing of the Sale, the Stalking Horse Purchaser is expected to have up to at least $24,089,304 in secured debt against the Debtor, consisting of (i) 100% of the amount outstanding under the DIP Facility of $1,777,665, consisting of $1,659,668 of principal, $17,997 in accrued and unpaid interest through that date, and at least $100,000 in out-of-pocket expenses, including attorneys' fees and expenses, (ii) $2,720,722 (consisting of $2,255,400 in principal, $97,872 in accrued and unpaid interest thereon through the deadline for the sale closing, and $367,450 in out-of-pocket expenses owing as of the Petition Date), or 93.0%, of the approximately $2,919,784 (consisting of $2,442,900 in principal, $109,434 in accrued and unpaid interest thereon through the deadline for the sale closing, and $367,450 in out-of-pocket expenses consisting of attorneys' fees and expenses of the Stalking Horse Bidder as of the Petition Date) in September 2013 Note Agreement funding, and (iii) $19,590,917 (consisting of $17,500,000 in principal, $1,994,368 in accrued and unpaid interest thereon through the deadline for the sale closing, and $96,549 in out-of-pocket expenses consisting of attorneys' fees and expenses of the Stalking Horse Bidder as of the Petition Date), or 70%, of the $27,914,827 (consisting of $24,975,000 in principal, $2,843,278 in accrued and unpaid interest thereon (and other charges) through the deadline for the sale closing, and $96,549 in the out-of-pocket expenses consisting of attorneys' fees and expenses of the Stalking Horse Bidder as of the Petition Date) in other secured debt against Seller incurred under the Pre-Petition Note Agreements (other than the September 2013 Note Agreement).

L.  The stated Purchase Price under the Stalking Horse APA is $32,612,276, comprised of a cash component of $8,522,972 and a credit bid component of $24,089,304.  If approved and consummated at such price, the Sale should result in payment in full of all amounts expected to be outstanding under the DIP Facility and the Pre-Petition Note Documents at closing.

M. The credit bidding provided for in the Stalking Horse APA, contemplated by the Bidding Procedures, and set forth in Paragraph 2 of this Order is permitted by section 363(k) of the Bankruptcy Code and is otherwise reasonable.

N. Paragraphs 22(f), (h) and (k) of the Bidding Procedures, which require that any competing bid must exceed the Stalking Horse Bid by the Overbid Amount (as defined in the Bidding Procedures), and that each successive bid must be in cash and exceed the prior bid by the Minimum Bid Increment (as defined in the Bidding Procedures), are reasonable bidding procedures under the circumstances.

O. Notice of the Motion, the Bidding Procedures, the proposed entry of this Bidding Procedures Order, and the hearing to consider the Motion, the Bidding Procedures, and the entry of this Bidding Procedures Order (the "Bidding Procedures Hearing") has been provided as set forth in the Motion, and is appropriate and reasonably calculated to provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004 and 6006, and no other or further notice of, or hearing on, the Motion or this Bidding Procedures Order is required.

P. The Sale Notice, substantially in the form attached as Exhibit 2 to this Bidding Procedures Order, is reasonably calculated and sufficient to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation:  (i) the date and time of the Bidding Deadline and the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale

Order, and the date, time, and place of the Sale Hearing; (iv) a description of the Sale as being free and clear of liens, claims, encumbrances and other interests (except as set forth in the Stalking Horse APA or other Competing Agreement); and (v) notice of the proposed Assumption and Assignment Procedures, and no other or further notice of such matters is necessary or shall be required.

Q. The Motion, this Bidding Procedures Order, the Assumption and Assignment Procedures set forth herein, and the Assumption and Assignment Notice substantially in the form attached as Exhibit 3 hereto, are reasonably calculated to provide Contract Counterparties to any Contracts and/or Leases to be assumed by the Debtor and assigned to the Successful Bidder(s) with proper and sufficient notice of the intended assumption and assignment of their Contracts and/or Leases, the procedures in connection therewith, and any Cure Amounts relating thereto.

R. Entry of this Bidding Procedures Order is in the best interests of the Debtor and its estate and creditors, and all other parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**Approval of Bidding Procedures, Including Credit Bidding**

1.    The Bidding Procedures attached hereto as Exhibit 1, including references therein to the Stalking Horse APA, are hereby APPROVED, and fully incorporated into this Bidding Procedures Order, and shall apply with respect to the proposed Sale of the Assets as contemplated in the Motion. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

2.    Pursuant to section 363(k) of the Bankruptcy Code and with respect to the Sale, the Stalking Horse Bidder shall have the right and be entitled to credit bid the following in order of secured debt priority:  (i) the first $1,777,665, consisting of the Stalking Horse Bidder's anticipated funding of at least $1,659,668 under the DIP Facility through the closing of the sale,

plus (x) accrued and unpaid interest and fees in the aggregate amount of $17,997 on amounts expected to be outstanding thereunder as of such date and (y) incurred unpaid actual and reasonable out-of-pocket expenses in connection therewith that, for bidding purposes only, will be fixed at $100,000, entirely as a credit bid; (ii) 93.0% of the next $2,919,734 consisting of the Stalking Horse Bidder's same percentage share of the $2,919,734 (including accrued and unpaid interest thereon through the deadline for the Sale closing and incurred out-of-pocket expenses as of the Petition Date) funding under the September 2013 Note Agreement as a credit bid, with the Stalking Horse Bidder being required to bid the balance of the portion of any bid relying on such second level of secured debt (i.e., $199,062) in cash; and (iii) 70% of the next $27,914,827 consisting of the Stalking Horse Bidder's same percentage share of the remaining secured debt incurred under the Pre-Petition Note Agreements (other than the September 2013 Note Agreement) in the approximate remaining amount of $27,914,827 (including accrued and unpaid interest thereon (and other charges) through the deadline for the Sale closing and incurred out-of-pocket expenses as of the Petition Date) as a credit bid, with the Stalking Horse Bidder being required to bid the portion of any bid relying on the balance of such third level of secured debt (i.e., $8,323,910) in cash.  Specifically, the "Purchase Price" set forth in the Stalking Horse APA, which is in the aggregate amount of $32,612,276, (a) encompasses and reflects the foregoing, (b) is comprised of a credit bid component of $24,089,304 and a resulting cash component of $8,522,972, and (c) per the Debtor's books and records, is anticipated to be sufficient, should the transaction ultimately be approved, to pay in full all amounts expected to be outstanding under the DIP Facility and the Pre-Petition Loan Documents at the closing of the Sale.  Should an Auction take place pursuant to the provisions of the Bidding Procedures, and the Stalking Horse Bidder continues to participate in such bidding, any bid by the Stalking Horse

Bidder in excess of such "Purchase Price" (except for the Stalking Horse Bidder's right to credit bid the Stalking Horse Bidder's Buyer Expense Reimbursement Cap) shall be a cash bid. The other Investors under the Pre-Petition Note Agreements shall have the right to credit bid in a corresponding manner.

3.    All objections to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived, or settled as announced at the Bidding Procedures Hearing or resolved by stipulation, reasonably acceptable to the Stalking Horse Bidder, signed by the Debtor, and filed with this Court, are overruled on their merits.

<u>**Approval of Buyer Expense Reimbursement**</u>

4.    As a result of the benefit to the Debtor and its estate of the Stalking Horse APA and to provide an incentive and to compensate the Stalking Horse Bidder for performing the substantial due diligence and incurring the expenses necessary and entering into the Stalking Horse APA with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtor shall reimburse the Stalking Horse Bidder for expenses associated with the Stalking Horse APA (including the fees and costs of the Stalking Horse Bidder's attorneys and other advisors) (the "<u>Buyer Expense Reimbursement</u>"). The claim of the Buyer in respect of the Buyer Expense Reimbursement is and constitutes (i) in the event the Stalking Horse APA is terminated by the Buyer pursuant to Section 9.1(d)(iii) thereof, an allowed super-priority administrative expense claim against the Seller under Sections 503 and 507(b) of the Bankruptcy Code in the Bankruptcy Case, senior to all other administrative expense claims of the Seller (other than any claims arising under the Buyer DIP Facility and the Carve-Out (as defined under any interim or final order approving the DIP Facility, or the credit agreement governing the DIP Facility)) and (ii) in all other events (other than a termination by the Debtor pursuant to Section 9.1(c) of the Stalking Horse APA), an allowed administrative expense claim

against the Seller under Section 503 of the Bankruptcy Code in the Bankruptcy Case subject to the Carve-Out.  The Seller shall, without the requirement of any notice or demand from Buyer or any further application to or order of the Bankruptcy Court, pay the Buyer Expense Reimbursement in cash to the Buyer on the earlier to occur of (i) one Business Day after the closing of any Alternative Transaction, or (ii) on the date claims of similar priority receive a distribution in the Bankruptcy Case.  The Buyer Expense Reimbursement is reasonable, was a material inducement to the Stalking Horse Bidder, was reasonably relied upon by the Stalking Horse Bidder in deciding to enter into the Stalking Horse APA, and is designed to achieve the highest or otherwise best price for the Assets.

5.      The Bid Deposit of the Successful Bidder (other than the Stalking Horse Bidder) will be used first to satisfy any Buyer Expense Reimbursement to which the Stalking Horse Bidder is entitled hereunder by reason of its not being the Successful Bidder, with the balance, if any, to be released to the Debtor or applied as provided under the Competing Agreement between the Debtor and such Successful Bidder.

**Assumption and Assignment Procedures**

6.      The following procedures regarding the assumption and assignment of the Debtor's executory contracts and unexpired leases in connection with the Sale (the "Assumption and Assignment Procedures") are hereby approved, and shall govern the assumption and assignment of all such contracts and leases proposed to be assumed by the Debtor pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder pursuant to section 365(f) of the Bankruptcy Code (as defined in the Motion, the "Assigned Contracts").

7.      Within two (2) business days after entry of this Bidding Procedures Order, the Debtor will file with this Court and serve the Assumption and Assignment Notice, substantially in the form attached as Exhibit 3 hereto, by first class mail, postage prepaid, facsimile, electronic

transmission, hand delivery or overnight mail on (a) each counterparty under each potential Assigned Contract (a "Contract Counterparty"), and (b) its attorney, if known, in each case, at the last known address available to the Debtor, provided, however, that the presence of any contract or lease on an Assumption and Assignment Notice does not constitute an admission that such Contract or Lease is an executory contract or unexpired lease. The Debtor reserves all of its rights, claims and causes of action with respect to the Assigned Contracts. The Assumption and Assignment Notice shall set forth the following information: (i) the contract(s) and/or lease(s) that may be assumed by the Debtor and assigned to the Stalking Horse Bidder/Successful Bidder(s); (ii) the name and address of the Contract Counterparty thereto; (iii) the amount, if any, determined by the Debtor to be necessary to be paid to cure and compensate for any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"); and (iv) the deadline by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assigned Contract.

8.      Any objections to the assumption and assignment of any Assigned Contract (each a "Contract Objection"), including without limitation any objection to the Debtor's proposed Cure Amount or the provision of adequate assurance of future performance under any Lease or Contract pursuant to section 365 of the Bankruptcy Code ("Adequate Assurance"), must: (a) be in writing and signed by counsel or attested to by the objecting party; (b) filed with the Clerk of the Bankruptcy Court, 824 Market Street N, 3rd Floor, Wilmington, DE 19801, by the Sale Objection Deadline or the Supplemental Objection Deadline, as applicable (each as defined below); (c) identify the lease or contract to which the objector is party; (d) describe with particularity any cure or other compensation the claimant contends is required under section 365 of the Bankruptcy Code (the "Alleged Cure Claim") and identify the basis(es) of the Alleged

Cure Claim under the Contract or Lease; (e) attach all documents supporting or evidencing the Alleged Cure Claim; (f) if the response contains an objection to Adequate Assurance, state with specificity what the objecting party believes is required to provide Adequate Assurance; and (g) be served in accordance with the Local Rules so as to be received on or before the relevant objection deadline by the following parties: (i) the Debtor's counsel, Campbell & Levine, LLC, 1700 Grant Building, 310 Grant Street, Pittsburgh, PA 15219, Attn: Paul J. Cordaro, Esq. and Campbell & Levine, LLC, 222 Delaware Avenue, Suite 1620, Wilmington, DE 19801, Attn: Mark T. Hurford, Esq.; (ii) counsel to the Stalking Horse Bidder, Mayer Brown LLP, Attn: Thomas S. Kiriakos, Esq., 71 S. Wacker Drive, Chicago, IL 60606, and Cousins Chipman & Brown LLP, 1007 North Orange Street, Suite 1110, Wilmington, DE 19801, Attn: William E. Chipman, Esq.; (iii) counsel to the Committee, if one is appointed; and (iv) all other parties that have requested notice in this Case (collectively, the "Assigned Contract Objection Procedures"). Any objection to the Cure Amount or Adequate Assurance which is timely filed and served by any Contract Counterparty in accordance with the Assumption and Assignment Notice and/or the Assigned Contract Objection Procedures, and which is not otherwise resolved by the parties, shall be heard by this Court at the Sale Hearing.

9.      If no Contract Objection is timely and properly filed and served in accordance with this Bidding Procedures Order and the Assigned Contract Objection Procedures, then the Cure Amount, if any, set forth in the Assumption and Assignment Notice shall be binding upon all Contract Counterparties to each such Assigned Contract for all purposes in this Case and will constitute a final determination of the total Cure Amount, if any, required to be paid in connection with the assumption by the Debtor and the assignment to any purchaser. In addition, each Contract Counterparty shall be forever barred from objecting to the Cure Amount set forth

in the Assumption and Assignment Notice, including, without limitation, the right to assert any additional cure or other amounts with respect to the Assigned Contract. The Court will make its determinations concerning Adequate Assurance under the Assigned Contracts pursuant to section 365(f) of the Bankruptcy Code at the Sale Hearing, or as soon as practicable thereafter.

10.      If, at any time after the entry of the Bidding Procedures Order, the Debtor or any Qualified Bidder identifies additional prepetition executory contracts and/or unexpired leases to be assumed and assigned to the Stalking Horse Bidder or other Successful Bidder as Assigned Contracts (whether before or after closing of the Sale), as applicable, the Debtor shall serve a supplemental Assumption and Assignment Notice (by facsimile, electronic transmission, hand delivery or overnight mail on the applicable Contract Counterparty (and its attorney, if known) to each supplemental Assigned Contract at the last known address available to the Debtor by no later than ten (10) days before the proposed effective date of the assignment. Each such supplemental notice shall set forth the following information: (i) the name and address of the Contract Counterparty; (ii) notice of the proposed effective date of the assignment (subject to the right of the Debtor and Stalking Horse Bidder/Successful Bidder to withdraw such request for assumption and assignment of the Assigned Contract prior to the assignment thereof); (iii) identification of the Assigned Contract; (iv) the Cure Amount, if any; and (v) the deadline by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assigned Contract (each a "Supplemental Assumption and Assignment Notice").

11.      Unless the Contract Counterparty properly files and serves a Contract Objection to the Supplemental Assumption and Assignment Notice in accordance with this Bidding Procedures Order and the Assigned Contract Objection Procedures within ten (10) days of the

date of the Supplemental Assumption and Assignment Notice (the "Supplemental Objection Deadline"), the Debtor shall be authorized to assume and assign the Assigned Contract, subject to the occurrence of the Closing, without further order or notice of hearing. If a Contract Objection is filed and served in accordance with this Bidding Procedures Order and the Assigned Contract Objection Procedures, and the objection cannot be resolved consensually, then the Debtor will schedule a hearing to consider the objection on the next scheduled omnibus hearing date (which may be the Sale Hearing).

12.     Any Contract Counterparty failing to timely and properly file and serve a Contract Objection prior to the Sale Objection Deadline (or the Supplemental Objection Deadline, as applicable) in accordance with this Bidding Procedures Order shall be deemed to consent to (i) the treatment of its Assigned Contract under section 365 of the Bankruptcy Code, (ii) the assumption and assignment of its Assigned Contract notwithstanding any anti-alienation provision or other restriction on assumption or assignment, and (iii) the provision of Adequate Assurance of future performance by the applicable assignee.

**Auction and Sale Notice**

13.     Not later than two (2) business days after the entry of this Bidding Procedures Order, the Debtor will cause the Sale Notice, substantially in the form attached hereto as Exhibit 2, to be served by hand delivery, overnight mail, U.S. express mail (for post office boxes only), e-mail or facsimile upon: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Stalking Horse Bidder; (iii) counsel for the Committee, if one is appointed; (iv) all entities known to have asserted any lien, claim, interest or encumbrance in or upon any of the Assets; (v) those parties who previously executed non-disclosure agreements as part of the process conducted by Cowen & Company prior to the Petition Date or expressed a bona fide interest in acquiring the Assets in the six (6) months preceding the date of the Motion;

(vi) federal, state and local regulatory or taxing authorities which are reasonably ascertainable by the Debtor to have a known interest in the Assets; (vii) known Contract Counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; and (viii) those parties who have requested notice pursuant to Bankruptcy Rule 2002.   Additionally, not later than two (2) business days after the entry of this Bidding Procedures Order, the Debtor will cause the Sale Notice, substantially in the form attached hereto as Exhibit 2, to be served by first class mail, postage prepaid, upon the mailing matrix.   Such notice of the Auction, the Sale, the Sale Hearing, and the entry of the Sale Order contained in the Sale Notice shall be good and sufficient for purposes of Bankruptcy Rules 2002, 6004 and 6006, which form of notice is hereby approved, and no other or further notice is or shall be required.

### Sale Hearing

14.    The Sale Hearing is scheduled for March 6, 2014 at 10:00 a.m. (Prevailing Eastern Time) before the Honorable Kevin J. Carey, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Wilmington, Delaware 19801.   Objections to the Sale, if any, must be filed on or before **5:00 p.m. (Prevailing Eastern Time) on February 28, 2014** (the "Sale Objection Deadline").   With the consent of the Stalking Horse Bidder (not to be unreasonably withheld), and after consultation with the Committee, if one is appointed, the Debtor may adjourn or continue the Sale Hearing from time to time without further notice to parties in interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

15.    Any Person or entity who fails to timely make an objection to the Sale on or before the Sale Objection Deadline in accordance with this Bidding Procedures Order shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of

the Assets free and clear of all liens, claims, encumbrances and other Interests (as defined in the Bidding Procedures), except as set forth in the Stalking Horse APA or any Competing Agreement (as defined in the Bidding Procedures), as applicable. Any creditor that receives notice of the Sale Hearing and fails to timely file an objection to the Sale shall be deemed to have consented under section 363(f)(2) of the Bankruptcy Code to a sale free and clear of such creditor's Interests, if any.

16.     At the Sale Hearing, the Debtor, after consultation with the Committee, if one is appointed, may present the Successful Bid and Backup Bid to the Court for approval; provided, however, that the Debtor has reserved all rights not to submit any bid which is not acceptable to the Debtor for approval by the Court; provided, further, that the Debtor has acknowledged that the Stalking Horse Bid is a Qualified Bid, is acceptable, and shall be submitted to the Court for approval in the event that there are no other Qualified Bids or the Stalking Horse Bid is designated the Successful Bid at the Auction.

### Miscellaneous Provisions

17.     The Debtor is authorized and empowered to take such actions as may be necessary or appropriate to implement and effect the terms and requirements established under this Bidding Procedures Order and, subject to any approved budget, to expend such sums of money and do other things as may be necessary and appropriate to comply with the requirements established by the Bidding Procedures and this Bidding Procedures Order.

18.     The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

19.    In any event of a conflict among this Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse APA, this Bidding Procedures Order shall govern.

20.    This Bidding Procedures Order shall be binding on the Debtor, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estate of the Debtor.  Certain provisions of this Bidding Procedures Order that relate to bid protections shall inure to the benefit of the Stalking Horse Bidder and its affiliates, successors and assigns.  The Stalking Horse Bidder shall have standing to appear and be heard on all issues relating to the sale process, the Bidding Procedures, the Auction, and/or the Sale.  The Bidding Procedures may not be modified without the prior written consent of the Stalking Horse Bidder, which consent shall not be unreasonably withheld.

21.    This Bidding Procedures Order shall constitute the findings of fact and conclusions of law and shall take immediate effect upon execution hereof.

22.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or otherwise, this Court, for good cause shown, orders that the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon entry of the Bidding Procedures Order.

23.    Except as provided in the Bidding Procedures and this Bidding Procedures Order, this Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of the Bidding Procedures Order.

Dated: February 1 2, 2014

Honorable Kevin J. Carey
UNITED STATES BANKRUPTCY JUDGE