# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **PLEXTRONICS, INC.,** | ) | **Case No. 14-10080 (KJC)** |
| | ) | |
| **Debtor.** | ) | **Related Docket Nos.: 4, 8, 26, 48, 63, 68,** |
| | ) | **78, 80-82, 94, 97, 98, 114, & __** |
| | ) | |

## ORDER (A) AUTHORIZING AND APPROVING (1) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND (2) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion"), filed January 17, 2014, of Plextronics, Inc. ("Plextronics" or the "Debtor"), in the above-captioned Chapter 11 case (the "Case"), pursuant to sections 105(a), 363, 365, and 503 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for:  (i) entry of an order (the "Bidding Procedures Order") (a) establishing bidding and auction procedures (the "Bidding Procedures") related to the sale of the Debtor's assets (the "Sale"), (b) approving bidding protections in connection therewith, (c) scheduling an auction (the "Auction") and a hearing for such Sale, (d) establishing certain notice procedures for determining cure amounts for executory contracts and unexpired leases to be assumed and assigned in connection with such Sale (the "Assumption and Assignment Procedures"), and (e) granting certain related relief; and (ii) entry of an order (this "Sale Order") (a) approving the Sale of the Debtor's assets, free and clear of all Interests (as defined below), (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases, and (c) granting certain related relief; upon the Declaration of William

Snyder Chief Financial Officer of the Debtor in Support of First Day Motions (Dkt. No. 4), the Declaration of Joshua Epstein Related to Prepetition Marketing of the Debtor's Assets (Dkt. No. 63), and the Declaration of Andrew W. Hannah, President and CEO of the Debtor Related to Certain Rights of Solvay America, Inc. and Various Corporate Documents and Contractual Agreements to Influence the Debtor's Business Decisions (Dkt. No. 68) (the "Hannah Declaration"), and no objections having been filed by the deadline therefor, this Court entered the Bidding Procedures Order on February 12, 2014 (Docket No. 78); and the Auction for the consideration of Qualified Bids and the selection of the Successful Bidder (each as defined in the Bidding Procedures Order) scheduled for March 5, 2014 having been cancelled by the Debtor because of the absence of any Qualified Bids having been submitted by the deadline therefor; and the stalking horse bid of Solvay America, Inc. ("Solvay America") as set forth, *inter* alia, in the Asset Purchase Agreement, dated January 16, 2014 (as amended by that certain Asset Purchase Agreement Amendment No. 1 dated as of January 24, 2014 and as further amended by that certain Asset Purchase Agreement Amendment No. 2 dated as of February 14, 2014, the "Original APA"), between the Debtor and Solvay America having been deemed as the Successful Bid pursuant to the provisions of the Bidding Procedures; and Solvay America, as permitted pursuant to the provisions of the Original APA and the Bidding Procedures Order, having designated its Affiliate, Solvay USA Inc. ("Solvay USA"), its "Buyer Designee" and having otherwise assigned all of its rights under the Original APA to Solvay USA and Solvay USA's having assumed all of Solvay America's obligations in connection therewith, and upon Solvay USA (the "Buyer") and the Debtor having entered into that certain Amended and Restated Asset Purchase Agreement, dated as of March 5, 2014 (attached hereto as Exhibit A, and as it may be amended, modified, or supplemented in accordance with the terms hereof and

thereof, the "Asset Purchase Agreement");[1] and upon the Declaration of Joshua Epstein Relating to Post-Petition Marketing of the Debtor's Assets (Dkt. 114); and this Court having conducted a hearing on the Motion on March 6, 2014 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Motion, the Asset Purchase Agreement, and this Sale Order; and this Court having reviewed and considered the Motion and all objections thereto, and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing and the Sale Hearing; and upon the entire record of the Bidding Procedures Hearing and the Sale Hearing, and after due deliberation thereon, and good cause appearing therefor:

### BASED ON THE RECORD, THE COURT HEREBY FINDS:[2]

### Jurisdiction, Final Order and Statutory Predicates

A.      This Court has jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set

---

[1]   Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Asset Purchase Agreement or, if not defined therein, in the Motion. Notwithstanding anything to the contrary otherwise set forth in the Asset Purchase Agreement or the Motion, the universe of "Assigned Contracts" as of the date of the entry of this Sale Order shall consist entirely of the contracts set forth on Schedule 2 hereof.

[2]   The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

forth herein.

C.    The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Notice of the Sale, Auction and the Cure Payments

D.    Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale, and the assumption, assignment and/or transfer of the Assigned Contracts, and a reasonable opportunity to object or be heard with respect thereto and to the entry of this Sale Order has been afforded to all known interested Persons and entities entitled to receive such notice, including, but not limited to, the following parties: (i) counsel to the Committee, if one is appointed; (ii) counsel to Solvay; (iii) the Office of the United States Trustee; (iv) all entities (or counsel therefor) known to have asserted any lien, charge, claim or encumbrance on the Purchased Assets; (v) all federal, state and local regulatory or taxing authorities that are reasonably ascertainable by the Debtor to have a known interest in the Purchased Assets; (vi) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the successful bidder; (vii) those parties who previously executed NDAs as part of the process conducted by Cowen & Company prior to the Petition Date or expressed a *bona fide* interest in acquiring the Assets in the six (6) months preceding the date of this motion; and (viii) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

E.    In accordance with the provisions of the Bidding Procedures Order, the Debtor has served notice (the "Assumption and Assignment Notice") upon all of the Contract Counterparties to the Assigned Contracts setting forth: (i) the contract(s) and/or lease(s) that may be assumed by the Debtor and assigned to the Buyer; (ii) the name and address of the

4

Contract Counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Debtor and/or the Buyer to withdraw such request for assumption and assignment of the Assigned Contract(s) prior to the Closing); (iv) the amount, if any, determined by the Debtor to be necessary to be paid to cure and compensate for any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"); and (v) the deadlines by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assigned Contract.

F.    The service of such Assumption and Assignment Notice: (i) was good, sufficient and appropriate under the circumstances of this Case; (ii) provided such counterparties with a full and fair opportunity to object to such assumption, assignment, or transfer and to the proposed Cure Amount set forth in the Assumption and Assignment Notice; and (iii) was in compliance with the Bidding Procedures Order and applicable provisions of the Bankruptcy Rules and Local Rules. Accordingly, no other or further notice need be given in connection with such assumption, assignment, or transfer or with respect to the amount of Cure Payments.

G.    As evidenced by the affidavits of service previously filed with this Court and as approved under the Bidding Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Auction, the Sale Hearing, the assumption and assignment of the Assigned Contracts, the entry of this Sale Order, and the Sale has been provided to all parties-in-interest; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of this Case, provided a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect thereto, and was provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and the applicable Local Rules; and (iii) no other or further notice of with respect to such matters is necessary or shall be required.

5

## Business Judgment

H.    The Debtor has demonstrated good, sufficient and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and other transactions contemplated by the Asset Purchase Agreement and the Transaction Documents, including, without limitation, the assumption, assignment, and/or transfer of the Assigned Contracts, (collectively, the "Transactions") pursuant to sections 363 and 365 of the Bankruptcy Code, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtor's business judgment and in the best interests of the Debtor, its Estate, and its creditors.   Such business reasons include, but are not limited to, the facts that:   (i) there is substantial risk of depreciation of the value of the Purchased Assets if the Sale is not consummated promptly; (ii) the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets; (iii) the Asset Purchase Agreement and the Closing will present the best opportunity to realize the value of the Debtor on a going concern basis and avoid decline and devaluation of the Debtor's business; and (iv) unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Asset Purchase Agreement, potential creditor recoveries may be substantially diminished.

## Good Faith of the Buyer; No Collusion

I.    Solvay America has acted in good faith, and the Buyer is purchasing the Purchased Assets in good faith and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and the Buyer is therefore entitled to, and granted pursuant to Paragraph 30 below, the full rights, benefits, privileges, and protections of that provision, and each has otherwise proceeded in good faith in all respects in connection with the Transaction in that, *inter alia*:   (i) Solvay America recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (ii) Solvay America complied

with the provisions in the Bidding Procedures Order; (iii) Solvay America agreed to subject its

bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all

payments to be made by Solvay America or the Buyer and other agreements or arrangements

entered into by the Buyer in connection with the Sale have been disclosed; (v) neither Solvay

America nor the Buyer has violated section 363(n) of the Bankruptcy Code by any action or

inaction; and (vi) the negotiation and execution of the Original APA, the Asset Purchase

Agreement and Transaction Documents were at arms' length and in good faith.

J.      Solvay America, the Buyer's assignor, owns voting capital stock of the Debtor,

three of its representatives previously were members of the Debtor's Board of Directors, and

certain other legal and contractual rights of Solvay America were set forth in and disclosed

pursuant to the Hannah Declaration.  Pursuant to Rule 6004-1 of the Local Rules, the Debtor

accordingly has disclosed its relationship with Solvay America and the Buyer (its Affiliate), and

no other disclosure and/or notice is required regarding the Debtor's relationship with Solvay

America or the Buyer.

K.      The Buyer's offer to enter into consulting agreements with certain officers of the

Debtor, and the terms and conditions of which, have been fully and adequately disclosed.

L.      None of the Debtor, Solvay America, or the Buyer, or any of their respective

Representatives, has engaged in any conduct that would cause or permit the Asset Purchase

Agreement or any of the Transaction Documents, or the consummation of the Transaction, to be

avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the

Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any

Person in connection therewith.

### Highest and Best Offer

M.      In accordance with the Bidding Procedures Order, the Asset Purchase Agreement

was deemed a Qualified Bid (as defined in the Bidding Procedures Order) and was eligible to participate at the Auction.

      N.     The Debtor appropriately cancelled the Auction after no other Qualified Bids were received by the deadline therefor in accordance with, and has otherwise complied in all material respects with, the Bidding Procedures Order. The sale process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.

      O.     The Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtor's Estate than would be provided by any other available alternative. The Debtor's determination that the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's business judgment.

      P.     The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this Case. No other Person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtor's Estate than the Buyer.

      Q.     The Purchase Price Credit Bid Component is authorized and appropriate pursuant to section 363(k) of the Bankruptcy Code.

      R.     Approval of the Motion and the Asset Purchase Agreement, and the prompt consummation of the Transactions contemplated thereby, is in the best interests of the Debtor, its creditors, its Estate and other parties-in-interest.

      S.     The sale and release of Avoidance Actions described in sections 2.1(t) and (u) and section 7.18(b) of the Asset Purchase Agreement were a material inducement for, and an express condition of, the Buyer's willingness to enter into the Asset Purchase Agreement, and when

8

viewed with the Transactions as a whole, will provide a greater benefit to the Debtor, its Estate, and its creditors than would the retention and prosecution of such Avoidance Actions in the absence of the Transactions.

### No Fraudulent Transfer; Not a Successor

T.        The Asset Purchase Agreement and Transaction Documents were not entered into, and the Transactions are not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtor under applicable Law, and none of the Parties to the Asset Purchase Agreement or any of the Transaction Documents are consummating the Transactions with any fraudulent or otherwise improper purpose. The Purchase Price for the Purchased Assets constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory or possession or the District of Columbia.

U.        Except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities, Solvay America and the Buyer shall have no liability, responsibility, or obligations of any kind or nature whatsoever for any Interest (as defined below) of or against the Debtor, or otherwise related to the Purchased Assets, by reason of the transfer of the Purchased Assets to the Buyer. Solvay America and the Buyer shall not be deemed, as a result of any action taken in connection with the Transactions, to: (1) be a successor (or other such similarly situated party) to the Debtor (other than with respect to the Assumed Liabilities as expressly stated in the Asset Purchase Agreement); or (2) have, *de facto* or otherwise, merged or consolidated with or into the Debtor. Solvay America and the Buyer are not acquiring or assuming any Interest, except as expressly set forth in the Asset Purchase Agreement with

respect to the Assumed Liabilities.

## **Validity of Transfer**

V.      Subject to the entry of this Sale Order, the Debtor has full corporate power and authority (i) to perform all of its obligations under the Asset Purchase Agreement and the Transaction Documents, and the Debtor's prior execution and delivery thereof and performance thereunder, is hereby ratified in full, and (ii) to consummate the Transactions.   The Asset Purchase Agreement and Transaction Documents, and the Transactions contemplated thereby, have been duly and validly authorized by all necessary corporate action.  No further consents or approvals are required for the Debtor to consummate the Transactions or otherwise perform its respective obligations under the Asset Purchase Agreement or the Transaction Documents, except in each case as otherwise expressly set forth in the Asset Purchase Agreement or applicable Transaction Documents.

W.      As of the Closing Date, the transfer of the Purchased Assets to the Buyer, including, without limitation, the assumption, assignment and transfer of the Assigned Contracts, will be a legal, valid, and effective transfer thereof, and vests the Buyer with all right, title, and interest of the Debtor in and to the Purchased Assets, free and clear of all Interests accruing or arising any time prior to the Closing Date, except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities.

## **Section 363(f) Is Satisfied**

X.      Solvay America would not have entered into the Original APA, and the Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, if the sale of the Purchased Assets, including the assumption, assignment and transfer of the Assigned Contracts, to the Buyer, were not free and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase

Agreement with respect to the Permitted Encumbrances and Assumed Liabilities), or if Solvay America or the Buyer, any of their respective Affiliates or Subsidiaries, or any of their respective Representatives, would, or in the future could, be liable for any of such Interests.

Y.    The Debtor may sell or otherwise transfer the Purchased Assets free and clear of all Interests because one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests against the Debtor, its Estate or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force and effect, that such creditor had immediately prior to consummation of the Sale, subject to any claims and defenses the Debtor and its Estate may possess with respect thereto.

Z.    Consistent with the foregoing, the Sale is expected to result and will result in the payment in full of all known secured claims against the Purchased Assets.

AA.    As used in this Sale Order, the term "Interest" includes, in addition to the types of claims described in Paragraph BB below, all of the following, in each case to the extent against or with respect to the Debtor or in, on, or against or with respect to any of the Purchased Assets: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), Encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or

recoupment, or interests of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this Case, whether imposed by agreement, understanding, Law, equity or otherwise, including, but not limited to, (i) Interests that purport to give to any Person a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtor's interests in the Purchased Assets, or any similar rights; (ii) Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, (iii) Interests that are or constitute, or that arise in connection with or with respect to, any Excluded Liability; (iv) Interests that arise from or in connection with any bulk sales or similar law, and (v) Interests arising under or in connection with any acts, or failures to act, of the Debtor or any of the Debtor's predecessors, Affiliates, or Subsidiaries, or any of their respective Representatives, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

BB.    Except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities, and without limiting the nature or scope of Paragraph AA above, the transfer of the Purchased Assets, including the assumption, assignment and/or transfer of the Assigned Contracts, to the Buyer or the Buyer Designee, as applicable, will not subject the Buyer or the Buyer Designee, or their respective Affiliates or Subsidiaries, or any of their respective Representatives to, or subject any Purchased Asset to or provide recourse for, any Liability or Encumbrance whatsoever with respect to the operation or condition of the Business or any of the

Purchased Assets prior to the Closing or with respect to any facts, acts, actions, omissions, circumstances or conditions existing, occurring or accruing with respect thereto prior to the Closing Date, including, without limitation, any Liability or Encumbrance arising from any of the following:   (i) any employment or labor agreements, consulting agreements, severance arrangements, change in control agreements or other similar agreements to which the Debtor is or was a party; (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Debtor; (iii) the cessation of the Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1990, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act; (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims; (v) environment liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any Environmental Laws; (vi) products liability or warranties; (vii) any bulk sales or similar law; (viii) any litigation by or against the Debtor; and (ix) the Laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, products liability, or successor, vicarious or transferee liability.  For the avoidance of doubt, the Liabilities and Encumbrances set forth in this paragraph are included in the defined

term "**Interests**" for all purposes of this Sale Order.

### Assumption, Assignment and/or Transfer of the Assigned Contracts

CC.    The assumption, assignment and/or transfer of the Assigned Contracts to the Buyer and the Buyer Designee, as applicable, pursuant to the terms of this Sale Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtor and its Estate, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.

DD.    To the extent necessary or required by applicable Law, the Debtor (through funding to be provided by Buyer) has or will have as of the Closing Date: (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code; and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. The respective amounts set forth on Exhibit A annexed to the Debtor's Assumption and Assignment Notice (and also set forth on Schedule 2 attached hereto) are the sole amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assigned Contracts set forth on Schedule 2 hereof.

EE.    The promise of the Buyer to perform the obligations first arising under the Assigned Contracts after their assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts. Any objections to the foregoing, the determination of any Cure Amount, or otherwise related to or in connection with the assumption, assignment or

transfer of any of the Assigned Contracts to the Buyer are hereby overruled on the merits or otherwise treated as set forth in Paragraph 3, 24, and 25 below. Those non-Debtor parties to Assigned Contracts who did not object to the assumption, assignment or transfer of their applicable Assigned Contract, or to their applicable Cure Amount, which includes all of the non-Debtor parties to the Assigned Contracts set forth on Schedule 2 hereof, are deemed to have consented thereto for all purposes of this Sale Order.

FF.    Pursuant to section 2.5 and section 2.6 of the Asset Purchase Agreement, the Buyer shall maintain certain rights to modify the list of the Assigned Contracts, after the date of this Sale Order and up to the applicable Designation Deadline as set forth in such section. Such modification rights include, but are not limited to, the right of the Buyer, prior to the applicable Designation Deadline, to designate a Contract for assumption by the Debtor and assignment to the Buyer, as well as for rejection by the Debtor. The Buyer would not have agreed to the Transactions without such modification rights. The notice and opportunity to object provided to Contract Counterparties to such Assigned Contracts and to other parties in interest, as set forth in the Assumption and Assignment Procedures contained in the Bidding Procedures Order, fairly and reasonably protects any rights that such counterparties and other parties in interest may have with respect to such Contracts.

## Compelling Circumstances for an Immediate Sale

GG.    To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, and to reduce the amount of postpetition debtor-in-possession financing borne by the Debtor, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Sale. The Sale must be approved and consummated promptly in order to preserve the viability of the Business as a going concern. Accordingly, there is cause to

lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with regards to the Transactions contemplated by this Sale Order, the Asset Purchase Agreement and the Transaction Documents.

HH.    Given all of the circumstances of this Case and the adequacy and fair value of the purchase price under the Asset Purchase Agreement, the proposed transfer of the Purchased Assets to the Buyer constitutes a reasonable and sound exercise of the Debtor's business judgment, is in the best interests of the Debtor, its Estate, and its creditors, and should be approved.

II.    The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363 and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transactions.

JJ.    The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for the Debtor, as it does not and does not propose to:  (i) impair or restructure existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtor; (iii) circumvent Chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.    The Motion, and the relief requested therein, are granted and approved, and the Transactions contemplated thereby and by the Asset Purchase Agreement and Transaction Documents are approved, in each case as set forth in this Sale Order.

2.    The Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

3.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, or otherwise settled as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits.

### Approval of Asset Purchase Agreement; Binding Nature

4.    The Asset Purchase Agreement and the Transaction Documents, and all of the terms and conditions thereof, are hereby approved.

5.    The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable Law, and the Transactions may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

6.    Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtor is authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate the Sale and the other Transactions pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and the Transaction Documents, and (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of its obligations as contemplated by the Asset Purchase Agreement and the Transaction Documents, in each case without further notice to or order of this Court. The Transactions authorized herein shall be of full force and effect, regardless of the Debtor's lack or purported lack of good standing in any jurisdiction in which the Debtor is formed or authorized to transact business.

7.    This Sale Order shall be binding in all respects upon the Debtor, its Estate, all creditors, all holders of equity interests in the Debtor, all holders of any Claim(s) (whether

{D0284597.1 }
708346291

known or unknown) against the Debtor, any holders of Interests against, in or on all or any portion of the Purchased Assets, all non-Debtor parties to the Assigned Contracts, Solvay America, the Buyer, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in this Case or upon a conversion to Chapter 7 under the Bankruptcy Code of this Case.

### Transfer of Purchased Assets Free and Clear of Interests; Injunction

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtor is authorized and directed to transfer the Purchased Assets, including but not limited to the Assigned Contracts, to the Buyer on the Closing Date in accordance with the Asset Purchase Agreement and Transaction Documents.  Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and the Buyer shall take title to and possession of such Purchased Assets free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities).

9.      All such Interests shall attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtor and its Estate may possess with respect thereto.  This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities) have been unconditionally released, discharged and terminated in, on or against the Purchased Assets.  The provisions of this Sale Order authorizing and approving the transfer of the Purchased Assets free and clear of Interests shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to

effectuate and implement the provisions of this Sale Order.

10.     At Closing, the liens of secured parties (other than Buyer) and in the amounts set forth in Schedule 1 attached hereto shall attach to the Purchase Price Cash Component of the Sale and such Purchase Price Cash Component shall be distributed to such creditors in such listed amounts in complete satisfaction of their secured claims.  Consistent with the foregoing and the provisions of the pertinent and operative documents, upon such payment, any rights UDC has or may have had under the UDC License shall be terminated and of no further force and effect.   The exercise of the Purchase Price Credit Bid Component will become final automatically upon delivery of the Purchase Price Cash Component to the Debtor, and accordingly, Buyer's secured claim is satisfied at that time.

11.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all Persons and entities holding Interests (other than the Permitted Encumbrances and Assumed Liabilities) are hereby forever barred, estopped and permanently enjoined from asserting their respective Interests against Solvay America and/or the Buyer, any of their respective Affiliates and Subsidiaries, and any of their respective Representatives, and each of their respective properties and assets, including, without limitation, the Purchased Assets.  On and after the Closing Date, the Buyer shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest to release, discharge and terminate such Interests in, on and against the Purchased Assets as provided for herein, as such Interests may have been recorded or may otherwise exist.  On and after the Closing Date, and without limiting the foregoing, the Buyer shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order.  This Sale Order

constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code for the Buyer to file UCC termination statements with respect to all security interests in or liens on the Purchased Assets.

12.     On and after the Closing, the Persons holding an Interest (other than a Permitted Encumbrance or an Assumed Liability) shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Purchased Assets, as such Interests may have been recorded or otherwise filed.  The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other jurisdiction in which the Debtor is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge and terminate any of the Interests as set forth in this Sale Order as of the Closing Date.  All persons and entities that are in possession of any portion of the Purchased Assets on the Closing Date shall promptly surrender possession thereof to the Buyer or the Buyer Designee at the Closing.

13.     The transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement and Transaction Documents does not require any consents other than specifically provided for in the Asset Purchase Agreement.

14.     This Sale Order is and shall be binding upon and govern the acts of all Persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing Persons and entities shall

accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge and terminate any of the Interests or to otherwise consummate the Transactions contemplated by this Sale Order, the Asset Purchase Agreement or any Transaction Document.

## Assigned Contracts; Cure Payments

15.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtor's assumption, and assignment and transfer to the Buyer of the Assigned Contracts are hereby authorized and approved in full subject to the terms set forth below.  The Debtor (through funding by the Buyer) shall, on or prior to the Closing, pay the Cure Amounts (or reserve the Alleged Cure Claim as set forth below) and cure any and all other defaults and breaches under the Assigned Contracts so that such Contracts may be assumed by the Debtor and assigned to Buyer or any new Buyer Designee on the Closing Date in accordance with this Sale Order, the Asset Purchase Agreement and the Transaction Documents.

16.    Upon and as of the Closing, the Debtor is authorized and empowered to, and shall, assume, assign and/or transfer each of the Assigned Contracts to the Buyer free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities).  As to the Assigned Contracts on Schedule 2 hereof, the payment of the applicable Cure Amounts (if any) set forth on such Schedule 2 shall, pursuant to section 365 of the Bankruptcy Code and other applicable law, (a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the Closing Date, and (b) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from any such default.  As to any other contract not on Schedule 2 hereof that should become an Assigned Contract pursuant to the modification and

designation rights set forth in section 2.5 or section 2.6 of the Asset Purchase Agreement (or otherwise), the payment of the applicable Cure Amounts (if any), or the reservation by the Debtor of an amount of cash (through funding by the Buyer) that is equal to the lesser of (i) the amount of any cure or other compensation asserted by the applicable Contract Counterparty as required under section 365 of the Bankruptcy Code or (ii) the amount approved by order of this Court to reserve for such payment (such lesser amount, the "Alleged Cure Claim") shall, pursuant to section 365 of the Bankruptcy Code and other applicable Law, (a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the Closing Date, and (b) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default.  Accordingly, on and as of the Closing Date, other than such payment or reservation, neither the Debtor nor the Buyer shall have any further liabilities or obligations to the non-Debtor parties to the Assigned Contracts with respect to, and the non-Debtor parties to the Assigned Contracts shall be forever enjoined and barred from seeking, any additional amounts or claims (as defined in section 101(5) of the Bankruptcy Code) that arose, accrued or were incurred at any time on or prior to the Closing Date on account of the Debtor's cure or compensation obligations arising under section 365 of the Bankruptcy Code.  The Buyer has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of section 365(f) of the Bankruptcy Code.

17.    To the extent any provision in any Assigned Contract assumed or assumed and assigned (as applicable) pursuant to this Sale Order (including, without limitation, any "change of control" provision) (a) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, such assumption or assignment, or (b) is modified, breached or terminated, or deemed modified, breached or terminated by any of the following:  (i) the commencement of this Case; (ii) the insolvency or financial condition of the Debtor at any time before the closing of this

Case; (iii) the Debtor's assumption or assumption and assignment (as applicable) of such Assigned Contract; or (iv) the consummation of the Transactions, then such provision shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict or condition such assumption or assignment, to modify or terminate such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Assigned Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith. All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e) and 365(f) of the Bankruptcy Code.

18.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtor in and under the Assigned Contracts, and each Assigned Contract shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order. Upon and as of the Closing, the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts and, accordingly, the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

19.    Upon the payment of the applicable Cure Amount or reservation of the Alleged Cure Claim, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assigned Contracts as of the Closing Date nor shall

there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

20.    The rights of the Buyer to modify the list of the Assigned Contracts, after the date of this Sale Order and up to the applicable Designation Deadline as set forth in section 2.6 of the Asset Purchase Agreement, are hereby approved.  Moreover, with respect to any Contract which is not an Assigned Contract on the Closing Date and provided such Contract has not been rejected by Debtor after the Closing Date pursuant to section 365 of the Bankruptcy Code, upon written notice(s) from the Buyer to the Debtor given at any time after the Closing Date, the Debtor is hereby authorized to take all actions reasonably necessary to assume and assign to the Buyer pursuant to section 365 of the Bankruptcy Code any such Contract(s) as set forth in such notice(s); *provided* that any Cure Amount applicable thereto shall be satisfied solely by the Buyer.  Notwithstanding anything in this Sale Order to the contrary, on the date any such Contract is assumed and assigned to Buyer or new Buyer Designee, such Contract shall thereafter be deemed a Purchased Asset for all purposes under this Sale Order and the Asset Purchase Agreement.

21.    All Contract Counterparties to the Assigned Contracts on Schedule 2 hereof shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and the Buyer shall enjoy all of the Debtor's rights, benefits and privileges under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

22.    Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtor that any Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.

23.    The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Assigned Contracts.

24.    For avoidance of doubt, the universe of Assigned Contracts as of the date of the entry of this Sale Order includes only those contracts on Schedule 2 hereof.  Specifically, that certain Cooperative Research and Development Agreement, dated as of September 26, 2013 (the "NIST CRADA"), between National Institute of Standards and Technology and the Debtor, that certain Cooperative Research and Development Agreement, dated May 9, 2008 (as modified by modifications dated November 14, 2008, May 4, 2009, June 19, 2009, July 14, 2010, September 8, 2010, October 25, 2012, February 26, 2013, and August 6, 2013, the "NREL CRADA"), between National Renewable Energy Laboratory and the Debtor, and that certain Work for Others Agreement No. NFE-12-04224 Operating Under Prime Contract No. DE-ACO5-00OR22725 for the U.S. Department of Energy, dated as of September 5, 2012 (as amended as of April 19, 2013, as of May 24, 2013, and as of August 21, 2013, the "Oak Ridge National Laboratory Work Order" and, together with the NIST CRADA and the NREL CRADA, the "Government-Related Contracts"), between UT-BATTELLE and the Debtor are excluded from the universe of Assigned Contracts, as of the date of the entry of this Sale Order.  Moreover, without limiting the foregoing, nothing in the Sale Motion, this Sale Order, or any of the Transaction Documents shall be interpreted to set cure amounts or to require the government to novate or otherwise consent to the transfer of the Debtor's right, title, and interest in and to the Government-Related Contracts or of any property, including but not limited to intellectual property, licenses, inventions, authorizations, leases, contracts, agreements, including but not limited to cooperative research and development agreements, or other interests of the federal government relating in any manner to the Government-Related Contracts (collectively, "Federal

Interests"). Notwithstanding anything in the Sale Motion, this Sale Order, or the Transaction Documents to the contrary, any such transfer of any such Federal Interests shall be subject to, and determined, and administered pursuant to applicable non-bankruptcy law, federal regulations, and federal statutes, all as if the Debtor's bankruptcy case had never been filed. Subject to the provisions of the Bankruptcy Code and applicable non-bankruptcy law, the government's rights to offset or recoup any amounts due under, or relating to, any Federal Interests in the Government-Related Contracts are expressly preserved. Without limiting the foregoing, insofar as the Seller and Buyer are concerned, at the request of the Buyer, the Seller shall cooperate with the Buyer in complying with all applicable non-bankruptcy law, federal regulations and statutes relating to the possible transfer of the Debtor's right, title, and interest in any of the Government-Related Contracts and, should any such transfer be consummated, such transfer shall be pursuant to the Asset Purchase Agreement and shall not entitle the Debtor to any additional compensation.

25. In lieu of the assumption and assignment of Lease Agreement No. 3649, dated March, 1, 2004, as amended through Addendum No. 21 (Lease and Forbearance Agreement), dated November 27, 2013 (the "UPARC Lease"), the Buyer and University of Pittsburgh – of The Commonwealth System of Higher Education ("Landlord") have reached a tentative agreement as to the provisions of a new (and extended) lease (the "New UPARC Lease"), which, subject to the negotiation of the final form and substance of the New UPARC Lease between Landlord and Buyer and satisfaction of all contingencies to the New UPARC Lease, will be executed on or before and effective as of the Closing. A summary of the principal terms of the New UPARC Lease is attached as Schedule 3 hereto. In the event that the New UPARC Lease is finalized, executed, delivered and effective, and all contingencies thereto are satisfied, including payment of the cure payment as set forth in the attached summary, as of the Closing, the UPARC

Lease shall be deemed rejected as of the Closing and the Limited Objection and Reservation of Rights of the University of Pittsburgh – of The Commonwealth System of Higher Education to Assumption and Assignment of Unexpired Lease of Nonresidential Real Property [Doc. No. 94] (the "Limited Objection") shall be deemed resolved and otherwise withdrawn, and Landlord shall have no remaining claim against the Debtor's estate relating to the UPARC Lease.  In the event that the parties cannot in good faith reach agreement as to the final form and substance of (and execute and deliver) the New UPARC Lease as of the Closing, and notwithstanding any other provisions of this Order, the Limited Objection shall be resolved as follows:  (i) to the extent the Debtor rejects the UPARC Lease or the UPARC Lease is deemed rejected, the Limited Objection shall be deemed moot; (ii) to the extent the Debtor elects to assume the UPARC Lease, which election shall be made by written notice to the Court and Landlord, Landlord's objections to the proposed Cure Amount, including, without limitation, with respect to payment of Landlord's attorneys' fees due under the UPARC Lease, shall be adjourned to the next omnibus hearing date following the Debtor's election to assume the UPARC Lease and may be resolved by agreement of the parties without further order of the court, and the parties reserve all of their rights with respect to such issues; and (iii) Landlord's objection as to adequate assurance of future performance under the UPARC Lease shall be deemed resolved and otherwise withdrawn with prejudice.  In such event, the Buyer shall be deemed to have reserved all of its rights under the Asset Purchase Agreement, the Bidding Procedures, and this Sale Order.

## Additional Injunction; No Successor Liability

26.     Effective upon the Closing Date and except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities, all Persons and entities are forever prohibited and permanently enjoined from:  (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act

(whether in law or equity, in any judicial, administrative, arbitral or other proceeding), to collect, recover or offset any Interest; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to an Interest; (iii) creating, perfecting or enforcing any Interest; or (iv) asserting any setoff, right of subrogation or recoupment of any kind with respect to an Interest, in each case as against the Buyer or the Buyer Designee, any of their respective Affiliates or Subsidiaries, or any of their respective Representatives, or any of their respective property or assets, including the Purchased Assets.

27.     The Transactions contemplated by the Asset Purchase Agreement and the Transaction Documents do not cause there to be, and there is not: (i) a consolidation, merger, or *de facto* merger of Solvay America or the Buyer, on the one hand, with or into the Debtor or the Debtor's Estate, on the other hand, or vice versa; (ii) a substantial continuity between Solvay America or the Buyer, on the one hand, and the Debtor or the Debtor's Estate, on the other hand; (iii) a common identity between Solvay America or the Buyer, on the one hand, and the Debtor or the Debtor's Estate, on the other hand; or (iv) a mere continuation of the Debtor or its Estate, on the one hand, with Solvay America or the Buyer, on the other hand.

28.     Except as expressly set forth in the Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities, the transfer of the Purchased Assets, including, without limitation, the assumption, assignment and transfer of any Assigned Contract, to the Buyer shall not cause or result in, or be deemed to cause or result in, Solvay America or the Buyer, any of their respective Affiliates or Subsidiaries, or any of their respective Representatives, having any liability, obligation, or responsibility for, or any Purchased Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor, transferee or vicarious liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty or otherwise, whether at Law or in equity, directly or indirectly,

and whether by payment, setoff, recoupment, or otherwise.

29.    For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Buyer of certain Persons previously employed by the Debtor, (i) Solvay America or the Buyer shall not have any obligations or liabilities to any employee of the Debtor or in respect of any employee benefits owing to any employee of the Debtor by the Debtor or by any plan or program administered by the Debtor or for the benefit of the Debtor's employees, and (ii) any obligations of Solvay America or the Buyer to any such Person shall be expressly limited to (a) those obligations expressly agreed upon by Solvay America or the Buyer (if any) with such Person, and (b) those obligations explicitly assumed by the Buyer or new Buyer Designee (if any) under the Asset Purchase Agreement.

### Good Faith

30.    The transactions contemplated by the Original APA were under taken by Solvay America, and the Transactions contemplated by this Sale Order, the Asset Purchase Agreement and Transaction Documents are undertaken by the Buyer, without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale and other Transactions shall not alter, affect, limit, or otherwise impair the validity of the Sale or such other Transactions (including the assumption, assignment and/or transfer of the Assigned Contracts), unless such authorization and consummation are duly stayed pending such appeal. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.

### Other Provisions

31.    The Debtor and its Estate shall not pursue any Avoidance Actions to the extent set

forth in section 7.18(b) of the Asset Purchase Agreement.

32.    The Buyer is hereby authorized, in its discretion, in connection with consummation of the Transactions to allocate the Purchased Assets, Assumed Liabilities, and Assigned Contracts among its Affiliates, Subsidiaries, designees, assignees, and/or successors in a manner as it, in its discretion, deems appropriate and such Person shall be entitled to all of the rights, benefits, privileges and protections of the Buyer as are accorded to the Buyer under this Sale Order, and the Debtor shall, to the extent set forth in the Asset Purchase Agreement and Transaction Documents, cooperate with and take all actions reasonably requested by Buyer to effectuate any of the foregoing. In the event that the Buyer designates any new Buyer Designee to acquire any Purchased Assets, including, without limitation, any Assigned Contracts, then any reference to the "Buyer" in this Sale Order shall be deemed to be a reference to "the Buyer and/or such applicable Buyer Designee," unless the context requires otherwise.

33.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this Case, (b) any subsequent Chapter 7 case into which this Case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order. To the extent of any such conflict or derogation, the terms of this Sale Order shall govern.

34.    Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. Accordingly, the Debtor is authorized and empowered to close the Sale and other Transactions immediately upon entry of this Sale Order.

35.    Nothing in this Sale Order shall modify or waive any closing conditions or

termination rights in Articles VIII and XI of the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

36.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transactions.

37.    As of the Closing Date, the Debtor is authorized to change its name to a name that was not included as part of the Purchased Assets.

38.    The failure specifically to include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

39.    The Asset Purchase Agreement and Transaction Documents may be modified, amended or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court, provided that any such modification, amendment or supplement shall not have a material adverse effect on the Debtor's Estate unless approved by order of this Court.

40.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things:  (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder; (ii) compel delivery of the Purchased Assets to the Buyer or new Buyer Designee; (iii) enforce the injunctions and limitations of liability set forth in this Sale Order; and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

41.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the provisions of this Sale Order and the terms and conditions of the Asset Purchase Agreement and the Transaction Documents.

43.    The rules of construction set forth in section 1.2 of the Asset Purchase Agreement shall apply to this Sale Order, *mutatis mutandis*.

44.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Sale Order shall govern.  To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Asset Purchase Agreement or any Transaction Document, on the other hand, the terms of this Sale Order shall govern.

Dated: March 6, 2014
       Wilmington, Delaware

Honorable Kevin J. Carey
UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1

### Distribution of Purchase Price Cash Component at Closing

| Lender | Principal | Interest through March 24, 2014 | Other Charges | Total |
|---|---|---|---|---|
| William R. Newlin Grantor Retained Annuity Trust Agreement I- June 30, 2011 | $150,000 | $20,792 | | $170,792 |
| Newlin Investment Co. – June 30, 2011 | 150,000 | 20,792 | | 170,792 |
| O'Kelly – June 30, 2011 | 75,000 | 10,396 | | 85,396 |
| LFTP – June 30, 2011 | 100,000 | 13,861 | | 113,861 |
| SVIC No. 20 New Technology Business Investment LLP | 3,000,000 | 176,500 | | 3,176,500 |
| Universal Display Corporation | 4,000,000 | 206,333 | 400,000 | 4,606,333 |
| Newlin Investments – May Note – A (prior to conversion to September 2013 Note Agreement) | 62,500 | 153 | | 153* |
| Newlin Investments – May Note – B (prior to conversion to September Note Agreement) | 62,500 | 56 | | 56* |
| O'Kelly – May Note (prior to conversion to September Note Agreement) | 62,500 | 28 | | 28* |
| Newlin Investments – September Note | 125,000 | 7,708 | | 132,708 |
| O'Kelly – September Note | 62,500 | 3,854 | | 66,354 |
| | | | | $8,522,972 |

*Interest only for period prior to loan conversion

## SCHEDULE 2

### Universe of Assigned Contracts as of Date of Entry of this Sale Order

| Contract Counter-Party | Contract Designation | Asserted Cure Amount as of Petition Date |
|---|---|---|
| Agilent Technologies<br>2850 Centerville Road<br>Wilmington, DE 19808 | Service Agreement dated 8/30/2012 | $14,332.02 |
| Aldrich Chemical Co., Inc.<br>6000 North Teutonia Avenue<br>Milwaukee, WI 53209 | Nonexclusive Distribution Agreement dated 2/12/2009, Amended 9/14/2010, 8/22/2011 | $0.00 |
| Aldrich Chemical Company, Inc.<br>6000 North Teutonia Avenue<br>Milwaukee, WI 53209 | Distribution Agreement dated 2/13/2008, Amended 9/8/2010, 8/22/2011, 2/11/2012, 6/1/2013 | $0.00 |
| Bruker Nano<br>3400 E Britannia Drive, Suite 150<br>Tucson, AZ 85706 | Nano Surfaces Division - Service Contract dated 4/30/2013 | $10,833.00 |
| Cambrios Technologies Corporation<br>930 E. Arques Ave.<br>Sunnyvale, CA 94085 | Joint Intellectual Property Rights Agreement dated 10/15/2010 | $0.00 |
| Carnegie Mellon University<br>5000 Forbes Ave<br>Pittsburgh, PA 15213 | License Agreement (Original GRIM) dated 8/13/2002, as Amended | $0.00 |
| Carnegie Mellon University<br>5000 Forbes Ave<br>Pittsburgh, PA 15213 | License Agreement (Living GRIM) dated 10/16/2006 | $0.00 |
| Carnegie Mellon University<br>5000 Forbes Ave<br>Pittsburgh, PA 15213 | License Agreement (Purification) dated 10/16/2006 | $0.00 |
| Chemical Abstracts Services<br>SciFinder CAS<br>PO Box 82228<br>Columbus, OH 43202 | SciFinder License dated 4/13/2013 | $10,095.00 |
| Christopher T. Brown<br>648 Acacia Lane<br>Redwood City, CA 94062 | Consulting Services and Confidentiality Agreement effective 10/11/2013 | $0.00 |
| Cintas Corporation<br>320 Westec Drive<br>Mount Pleasant, PA 15666 | Service Agreement dated 6/18/2013 | $3,269.46 |

| Contract Counter-Party | Contract Designation | Asserted Cure Amount as of Petition Date |
|---|---|---|
| CMU Pittsburgh Super Computing Center<br>300 S. Craig Street<br>Pittsburgh, PA  15213 | Corporate Affiliate Program Agreement effective 3/15/2013 | $0.00 |
| Electroninks, Inc.<br>105 S. Goodwin Ave.<br>Urbana, IL  61801 | Subcontract Agreement dated 6/10/2013 | $0.00 |
| Foundation IP2318 Mill Road12th FloorAlexandria, VA  22314 | Services Agreement effective 4/2/2009 | $0.00 |
| Iron Mountain Corporation<br>1201 Freedom Road<br>Cranberry Twp., PA  16066 | Customer Agreement effective 8/8/2012 | $66.05 |
| Julie Heinrich, PhD<br>210 Maple Avenue<br>Pittsburgh, PA  15218 | Consulting Services and Confidentiality Agreement effective 7/17/2013 | $0.00 |
| Kateeva, Inc.<br>1430 O'Brien Dr<br>Menlo Park, CA  94025 | Cooperation Agreement 2/22/2013 | $0.00 |
| Liquid X Printed Metals, Inc.<br>515 William Pitt Way<br>Pittsburgh, PA  15238 | Service Agreement 3/16/2012 | $0.00 |
| Nano-C, Inc.<br>33 Southwest Park<br>Westwood, MA  02090 | Joint Development and Commercialization Agreement dated 6/28/2007 Amended 3/1/2008, 2/9/2009, 2/13/2009, 1/1/2010, 2/15/2011 | $0.00 |
| P&H Tech Co., Ltd.<br>RM 807<br>DAEWOO-FRONTIER-VELLY-1DANGI<br>1030, Jung-dong, Kiheung-gu<br>Yongin-city, Gyeonggi-do<br>Korea 446-916 | Sales Representative Agreement dated 1/1/2012, Addendum on 2/6/2013, Amended 12/31/2013 | $12,562.50 |
| Sanyo Chemical Industries, Ltd.<br>11-1 Ikkyo nomoto-cho<br>Higashiyama-ku<br>Kyoto Japan 605-0995 | License and Supply Agreement dated 8/6/2009, as Amended through 7/3/2012 | $0.00 |

| Contract Counter-Party | Contract Designation | Asserted Cure Amount as of Petition Date |
|---|---|---|
| Sanyo Chemical Industries, Ltd.11-1 Ikkyo nomoto-choHigashiyama-kuKyoto Japan 605-0995 | OLED Distribution Agreement dated 4/21/2011, as Amended through 4/20/2013 | $0.00 |
| Shimadzu Financial Services 1719 Route 10 East, Suite 306 Parsippany, NJ  07054 | Equipment Rental Agreement dated 10/22/2013 | $0.00 |
| Spectro Analytical Instruments, Inc. (AMETEK) 91 McKee Dr Mahwah, NJ  07430 | Flex Service Contract 5/22/2013 | $7,671.00 |
| Sumitomo Chemical Co., Ltd. 27-1 Shinkawa 2-chome, Chuo-ku Tokyo 104-8260 Japan | Material Evaluation Agreement dated 8/16/2011 | $0.00 |
| Thermo Electron North America LLC (Dionex) PO Box 71212 Cincinnati, OH  45271 | Service Agreement 3/28/2013 | $0.00 |
| VAR Resources, Inc. 2330 Interstate 30 Mesquite, TX  75150 | Equipment Lease dated 4/27/2012 | $0.00 |
| Wells Fargo Financial Services 733 Marquette Avenue, Suite 700 Minneapolis, MN  55402 | Copier Usage Agreement dated 3/30/2012 | $0.00 |

## SCHEDULE 3

### Summary of Principal Terms of New UPARC Lease[1]

**Property:** The University of Pittsburgh Applied Research Center ("U-PARC")

**Building:** A portion of Buildings B3 and C5

**Building Ownership and Management:** U-PARC is owned by The University of Pittsburgh – of the Commonwealth System of Higher Education ("Landlord"), and professionally managed by Oxford Development Company.

**Tenant:** Solvay USA, Inc. ("Tenant").

**Proposed Premises:** **Approximately 35,252 RSF and the waste storage facility.** A common area factor of approximately 15% is applied to multi-tenant floors (basement of B3 and C5 rooms).

**Lease Term:** 30 Months, which shall commence upon the settlement of the Plextronics acquisition.

**Base Rental Rate:**

| 30 Months | |
| --- | --- |
| Months | Monthly Rent |
| 1-12 | $47,191.41 |
| 13-24 | $48,606.70 |
| 25-30 | $50,064.91 |

So long as Tenant is not in default of the Lease, Tenant will be provided with free rent abatement for the seventh month of the lease equal to $47,191.41 and rent abatement for a portion of the twenty-sixth month of the lease equal to $25,000.

**Lease Type:** The above rent structure is based on a modified gross lease, inclusive of the following: normal electric use not including process/operational electric, steam heating, HVAC in the office areas (except for separately metered HVAC system in Building C5), parking, security, cleaning in the office areas, snow removal, sanitary, storm and industrial sewers, and operating and tax escalations; as further defined in the Lease Agreement.

---

[1] This Schedule 3 is intended only as a summary of the principal terms of a non-binding Lease Proposal, dated March 5, 2014, between Oxford Realty Services, Inc. and Solvay USA, Inc. To the extent of any discrepancy between this Schedule 3 and the Lease Proposal, the Lease Proposal shall control. The Lease Proposal is a non-binding proposal subject to errors, omissions, and availability of space, withdrawal from the market, all of Landlord's formal and internal approvals, and the full execution of a mutually acceptable lease agreement by and between Landlord and Tenant. It is understood that the terms and provisions set forth in the Lease Proposal may be further clarified or amplified in the Lease, and that terms and provisions not set forth therein are to be mutually agreed by Landlord and Tenant.

The Landlord will meter all new process utilities which will be paid by Tenant on a monthly basis, in addition to the current utilities being metered and billed to Plextronics.

**Delivery of Premises:** Landlord shall deliver the Premises in its current "as-is" "where-is" condition.

**Tenant Improvement Allowance:** Landlord shall provide Tenant with a tenant improvement allowance of $85,000.00 which shall be used toward improvements to the Leased Premises.

**Tenant Improvements:** Tenant shall be responsible for all costs associated with the design and construction of any additional improvements to the Leased Premises. Tenant will be required to obtain Landlord's written approval on the design and construction drawings prior to releasing Tenant's contractor to commence construction. Landlord's review and approval shall not be unreasonably withheld or delayed.

**Renewal Option:** Tenant shall be provided with a one-time right to renew the Leased Premises for a period of twelve (12) months. Tenant will be required to provide nine (9) months prior written notice and the rental rate shall be based on an increase of 3% of the then current base rent for the Leased Premises except for Building C5, which shall be increased by 6% of the then current base rent.

**Security Deposit:** Tenant will not be required to provide a security deposit. The security deposit previously paid by Plextronics and held by Landlord, which security deposit is being sold to Solvay in connection with the acquisition of the assets of Plextronics, shall be applied as a credit against the cure payment of approximately $360,199.46 due from Solvay to Landlord at the time of execution of the Lease Agreement. See "Contingency" below.

**Insurance:** Tenant shall be responsible to carry the following minimum limits of not less than the following: Commercial General Liability, $1,000,000 Each Occurrence, $2,000,000 General Aggregate, $1,000,000 Products/Completed Operations, $1,000,000 Personal and Advertising Injury, $100,000 Fire Damage (any one fire), $10,000 Medical Expense (any one person); Automobile Liability, $1,000,000 Combined Single Limit for Bodily Injury and Property Damage per Accident (coverage to include hired car and non-owned automobiles).

**Contingency:** The Lease Agreement shall be contingent upon Tenant satisfying the cure payment of approximately $360,199.46 at the time of execution of the Lease Agreement.